Michigan. Oral argument not to exceed 15 minutes per side. Mr. Mason for the appellant. Thank you, Your Honor. Good morning, Justices. May it please this honorable court, Lance Mason appearing on behalf of the appellant in this matter, and respectfully I'd like to reserve three minutes for rebuttal. All right. Good morning. Good morning. You may proceed. Thank you. Your Honor, this is a race and national origin discrimination claim and retaliation claim brought under the Title VII. My client, Rosettus Weeks, who's been employed with the State of Michigan basically since 1988. This is a case where the lower court granted defendants motion for summary judgment in this case and I'm appealing that decision. First of all, with all due respect, Justices, the standard of review in this case is that the defendant has the burden of showing conclusively that no genuine issue or material fact exists. And that this court may review the motion for summary judgment in no vote. Assessing the evidence, facts, and inferences in light more favorable to my client, the non-movable party, the non-moving party. My client, in terms of the credentials for the position, Your Honor, my client has a bachelor's degree in business administration from Liberia. He has an MBA, CPA. He has an extensive work history dealing with the director's position, starting off as an assistant auditor general with the state in 1988. He's had two stints as a hospital director, performing the actual mandates of the job. He was a hospital director from October 1999 to March 2005. He was a hospital director from June 2006 to June 2008. It would appear that we have two qualified candidates, one with clinical experience, one obviously with administrative experience. Where would we look to determine which of those is more relevant to the position? That was the original job description. It indicates that clinical, it's not a clinical job, it's an administrative job. My client had been in that job for eight years. So if you look at the original job description, foremost, that's where it has the original criteria. The whole purpose of the civil service process when they create these job descriptions, they go through a whole analysis to determine what educational requirements that are essential to the job. They're looking at whether or not there's a special skill required for this job. Mind you, my client had been in that job in the past. 60% of the individuals who are directors, his five positions, 60% do not have the requisite criteria that was this exclusionary criteria that the defendants created. So the first place to look, Your Honor, is looking at the job description itself. The second place to look at, Your Honor, once the position was reclassified to a level 18, which is a promoted position, that that job description does not contain the added criteria in terms of requiring clinical responsibilities. So if you look at that, you start with the original description and then fast forward it to the reclassified position that she ultimately has today. The criteria does not list clinical responsibilities as an essential function of the job. So you have these things going on simultaneously with changing the criteria. We have a situation here where in 2008, my client had prior protected activity. He filed complaints against his boss in 2005 challenging her credentials. As a result, he filed a technical complaint. Technical complaints go through the state, the civil service process. As a result of that 2005 complaint to my client, his boss, Cynthia Kelly, was removed from the position. That's some history that goes back. I'm not using that to show that these are specific claims. I'm just using it from an evidentiary standpoint, from a relevancy standpoint, to show a scenario that they had knowledge that my client was making complaints in the past. So we fast forward that to 2008. What happened is as a result of Cynthia Kelly receiving the position, removed from the position in 2008, they reclassified and changed the position, allowed her to get a position again in 2000, and later on in 2005, early 2006, my client challenged that. As a result of that, at some point there was some resolution where my client was given a position as a director at the Walter Ruther facility. And then we have a situation where the position becomes open again in 2008. A manager's position becomes open in 2008. Cynthia Kelly gets the position again. My client complains about it through the technical complaint. He complains about it through EEOC. He subsequently files an EEOC complaint. Now I'm not alleging again that I'm revisiting the 2008 litigation, because he had already had a trial on that. The trial was not completed until March 2011. But you do have a scenario in that window of time where there's active, pending litigation that the criteria was changed. The criteria only required a bachelor's degree. What happened is that the defendants changed the criteria to mandate that the requisite person have two years of direct clinical experience. Direct clinical experience as a physician, psychologist, or psychiatrist. To make this a little more explicit in terms of the retaliation claim, as I understand it, the person who was removed from a position pursuant to a—administratively removed, even though your client lost the case, with regard to your client's previous discrimination claim, that person then, by the name of Cynthia Kelly, ends up participating in this election of the individual who wound up filling the position that's the subject of this lawsuit subsequently, and that's sort of part of the basis of your retaliation claim. Yes, it is, Your Honor. Because she's an active participant. She wrote the job—she wrote the specifications. She was involved in coordinating the effort with the Civil Service Commission to adopt the language that's used as the alleged justification. My—Your Honor, in terms of fast-forwarding the situation from the retaliation standpoint, I've shown that my client was engaged in protected activity. He suffered adverse employment action because the position is, in fact, a promotion. It has all the indicia of a promotion. He's a member of a protected class. If we talk about qualified for the position, he's clearly qualified for the position. When I say it's a promotion, it's an increase in supervisory responsibility. It's a bigger budget, $65 million. It's more prestigious and visibility in the community. It was reclassified to a level 18, which would increase in pay, which also reflects the prestigious nature of this position and the higher responsibilities of this position. So it's actually adverse employment action. One thing that doesn't seem to be clear here in the record is the—with respect to the so-called selective position requirement that resulted in the criteria that a person—for the qualifications that a person had to have to fill the position. Who designed the selective position requirements that resulted in the selection of—I guess the name is Carol Holden—for the position instead of your client? The criteria was created by Cynthia Kelly, Joe Collins. They created the criteria. They knew and they testified that they were aware that prior to the time that they created this criteria, what Carol Holden's qualifications would be, what my client's credentials were, and more importantly, it's important to note that the position was relegated. It was relegated to an internal posting only to that department. So they knew ahead of time who had what experience, who had what credentials. They knew it's an internal posting. So your claim is that the circumstantial evidence, at least, would suggest that the criteria was designed in a way that would exclude your client from being qualified for the position. Exactly. In retaliation and differential treatment in terms that they wanted my client to be excluded. If you couple that with, Your Honor, the fact that the judge made a crucial error in his analysis that hinders the whole case. The judge indicated that if the defendant had that criteria as an important criteria, when another director's position became open, what they do is they select another director who doesn't have the criteria at all. He has a major in political science, health administration. He doesn't have the requisite skill set that they claimed that they were moving in the direction to create. So that undermines the whole argument that that's the preferred criteria because the opportunity had presented itself to hire a director and they hired a new director and that person doesn't have it. So it undermines their credibility in that regard. We're talking about credibility. I'm just saying getting to a jury in terms of a jury. A jury would at least be... Can I ask a question? I'm sorry. Yes, Judge. I'm sorry. No. I mean, we've talked about the clinician experience. That aside, what about the elephant in the room? Your client was disciplined and removed from a hospital directorship two years before this. What reasonable business person would hire somebody who'd been disciplined and removed from the position? Well, I want to address that directly. You had a legitimate business justification. Yes. Two things. One of the things that's important, when the defendants first responded to the EEOC complaint, they indicated that the only reason that my client didn't get the position was because he didn't have the requisite criteria. It was only in the midst of litigation that the defendants created that. The case law is clear. If you change your rationale... Shifting justification. Shifting justification in the midst of litigation, then the other thing is attacking that directly. My client was not disciplined. It came to a situation where he went through the technical complaint process and they ruled that it wasn't disciplinary because they had a right to reserve the right to transfer him to another facility. So it wasn't disciplinary. So they cannot have the best of both worlds here. So to address that directly. Well, that's helpful. In the final analysis, you're arguing that there are disputed issues of fact that should have gone to trial. No question about it. I think the judge did a mini-trial on the case with all due respect because his analogy, respectfully so, was flawed. He said, Mr. Mason, he said that the hiring of Richard Young, also a Caucasian male, after the fact does not help my case because Mr. Young was hired before the SPR was created. That's untrue. If that's untrue factually, then the reverse analogy applies. You use the positive approach to that. It says that hiring Mr. Young shows that the defendant has actually abandoned clinical experience as a preferred requirement and that the hiring of Mr. Young speaks to the lack of evaluation of clinical experience as a hospital director. It speaks volume to that issue. Were we to second guess an employer's decision that a clinician will be a better director than a non-clinician? If you have a situation where if the decision is being made based upon the fact that exclusionary, it's an exclusionary criteria. It's not a preferred. No one has said that it was a preferred criteria. In fact, the civil service castigated its own staff by saying that you knew at every stage in the process that this was not allowed under the civil service rules. So it's not good faith. You can't say good faith when everybody knew at the beginning that this was not allowable to be able to change the civil service rule to accommodate that. Civil service is in the facilitation role at this point. I thought that the argument that you were making, maybe it's in your papers, was that the clinical requirement was put in there so that the defendants could select the preferred person that they already had decided that they wanted in the place of their client. That's exactly true, Judge. That's true. Okay. I see you're out of time, Mr. Mason. Okay. Thank you. And I'll reserve three minutes for me, Bob. Yeah, you'll have your three minutes. Counsel, good morning. It seems like questions of fact are all over the place in this case. I'm having a hard time understanding why the case should have been disposed of on summary judgment. What do you have to say about that? Well, sure. Let me tell you who I am. I'm Assistant Attorney General John Fedenski. I'm appearing on behalf of the State of Michigan. Let me begin with the question Judge Strange rose, which was, what do you look at when you have two qualified candidates? I think the presumption in that question is Carol Holden met the minimum qualifications. Mr. Weeks, the plaintiff, met the minimum qualifications. And I think the answer is you look at the record evidence and you look at what legitimate business reasons the employer had, and the case law says federal courts aren't a super employment office that is to second-guess those things. Well, is that really what you said really true? As I understood, under the criteria, the plaintiff was not qualified for the position because you had to have clinical experience, and he was made one of the two finalists with the person who was selected, even though he didn't have the clinical experience. So the question, and then there were other applicants that were excluded, and the question arises is why did your client make him a finalist if he didn't have the threshold qualifications to even be in the process? What would you say about that? Well, I would point out a few other facts. I think one fact is that Mr. Weeks submitted a late application. So on that basis alone, his application could have been screened out. And so if there was a retaliatory intent or a motive here to discriminate against Mr. Weeks, why go to the bother of this grand conspiracy to create a special position requirement? The involvement of the civil service staff in the review and approval of that special position requirement is important because it breaks the chain of causation for both the race discrimination claim and the retaliation claim. The people who knew the fact, though, the decisions, the relevant decisions had already been made when the civil service commission committee said that the requirement was not justifiable. So that doesn't break any chain in terms of whether there was discriminatory intent or retaliatory design that gave rise to the decision in the first place. Well, I would respectfully disagree, Your Honor. It does because the people who have been identified as being aware of the prior protected activity are Cindy Kelly, Mike Head, and Joe Collins. But they did not control the process for creating and approving the SPR. People who didn't know any of that protected activity were the ones who reviewed and approved it. You have Susan Cooper's deposition. You have Jeanette Robinson. And you have their superiors. And, as Judge Friedman pointed out- What you just said is not completely true because the HR people subsequently said that they erroneously approved, gave their approval. And they were rather passive actors here, and especially since they, after the fact, said that they had erroneously given their approval. Well, Your Honor, the reason that they said that because it was in light of what a hearing officer in the civil service commission decided, which was the way the rule is written, you can have narrowing of qualifications. For example, we require a bachelor's degree for this specific position, but we want a science-based bachelor's degree. The difference here was a higher order of experience is what the SPR called for. And Mike Head testified as to what his business reasons for that were. And the civil service staff looked at it and said, well, this is a bit unusual. Usually it narrows what your experience is. It doesn't elevate it. But what they also said is, in the case of, for example, a general counsel position, where a Juris Doctor degree would be required. In those cases, special position requirements were approved where the minimum qualification for a job was a bachelor's degree. And as Judge Friedman pointed out in his opinion, this presents, I think, record evidence and a solid basis for the civil service commission, or that civil service staff, while ultimately mistaken. Subsequently, once a hearing officer looked at the issue and read the rule, when they looked at it, they said, well, we have some precedent for this. Let's run it up the chain of command. They don't know who Rosettus Weeks is. They don't know any of the history of the litigation or the technical complaints. And it got approved. And once the department got that approval, they used the SPR. And the SPR, I think, in terms of its practical application, simply screens for interviews and screened candidates. What the hearing officer recognized and what Judge Friedman recognized is you need to look at a higher level of causation, and that is, would it have made a difference anyway? Judge Black mentioned the elephant in the room. What business, what government operation would hire someone who has the checkered past and the performance issues that Mr. Weeks has had? Isn't your problem that the record indicates that you didn't exercise your business judgment, that what happened was you narrowed the category down to two candidates, and then you said you're not qualified because you don't meet the SPR requirement, and you did not, in fact, look beyond that? I'm struggling to understand how you can rely on business judgment when you didn't exercise it. Well, in terms of Carol Holden's qualification, there is a record basis for that. There's a memorandum written about what her experience was, her resume. No, but the question, the nub of the question is what actually happened here? You had seven candidates. You narrowed the field to two. You looked at the two, and you said you do not qualify because you don't meet the SPR. So I'm not understanding how we ever reach independent business judgment because the whole ballgame is that he is removed from the possibility of having the job because of the SPR. And so are five other candidates of various races. Agreed, but we're talking about this one. Sure. And so you help me understand. It seems to me that when you made that decision, all of your business argument justifications fall away because you don't get to use those as a justification now because you did not exercise business judgment then. So we're down to one issue, the SPR. And what are the business reasons for the SPR? I don't know if I agree. Yeah, maybe the business reasons. That's a fair statement. Right. The business reasons for the SPR. Tell me where else in this record there is any evidence that there was a desire to have clinical experience or an informal policy that would state that or anything outside the SPR. Sure. The deposition of Mike Head, who is the supervisor of Cindy Kelly, who said he relied on his years of experience in the Department of Community and Mental Health, where he said, we want to avoid patient abuse scandals, we want well-run hospitals, and facilities that are run by people with clinical background, in my judgment, based on my experience, are better run. And Mr. Mason mentioned that 60% of hospital directors don't have that experience. Well, those folks are grandfathered in, and they have a track record of running a hospital effectively, and we'd be buying a lawsuit. Are you quoting Mr. Head right now? Yes, that's right. I thought, I mean, Mr. Head made a number of comments, but the way he summed it all up was that you didn't have to have clinical experience for the position, but all other things being equal, and I think he used the phrase, all other things being equal, he would prefer clinical experience. Yeah, he said that, and I think he was reflecting the past history in terms of hiring practices, and the hearing officer and Judge Friedman both said, it's a plus, it's a bonus, having clinical experience running a facility. Yes, Judge? Did you suggest that having clinical experience helps avoid patient abuse? That's right. That's what Judge Friedman reasoned. I'm sorry? That's what Judge Friedman reasoned. That's what the hearing officer reasoned in his decision rejecting the grievance here. And the plaintiff was removed from his prior directorship based on a patient abuse scandal? That's correct, and his interference in an investigation. Wouldn't that highlight the business judgment decision to be sure that the new director is a clinician? Absolutely. I think it would, and in terms of what the record has and what the record reflects, there was, in fact, discipline imposed in that situation. It was a written reprimand. You know, I'm having one problem here. The position you've officially taken in your briefs and such is that you say that the plaintiff is qualified for the position, and if he was involved in some kind of patient abuse scandal that was of any moment, I don't know how you could concede in your papers that he's qualified for this position that we're talking about here. I mean, either he did something that was so awful that he's excluded from consideration, or, as your client has admitted, he was qualified for the position at the time he was considered for the position. You can't put that in your papers and come here and argue something different. Well, Your Honor, I don't mean to split hairs, but I guess if you need to look at the body of qualifications, I think minimum qualifications is what is set out in a position description, and a position description says level of experience, level of education, things of that sort. It doesn't say lack of prior performance issues, and what we have argued in our papers is that these two candidates were not similarly situated. That's important to both the race discrimination claim and the retaliation claim. But that argument is based on the SPR because... It's based on the SPR, but it's also based on the backgrounds of both the candidates. Carol Holden has a Ph.D., 23 years of increasing experience. She was the acting director of the very facility that was looking to have the position filled. She worked with the prior incumbent. Maybe you can help me here. Sure. Let me just get down to what's concerning me. Sure. These are all really good arguments. These are all, what you're saying, are good arguments for why perhaps the plaintiff was not the best person for this job, but my concern is that that wasn't why he was excluded. What we have, as I understand the record, and correct me if I'm wrong, we have seven narrowed to two, the plaintiff was excluded because he didn't meet the SPR. That was it. So I'm not sure how we as judges can come in later and say, well, you wouldn't have won anyway because that's not the basis of your decision. It seems the question before us is, is there a dispute of material fact on the SPR itself? Because that was the criteria used to exclude him. You could have not excluded him on that and gone down the whole nine yards, and then what we'd be looking at is that record and your exercise of business judgment. My problem is the way the case is presented. Well, I see that, Your Honor, but I suppose maybe, I don't know if it's the right analogy, but if a court dismisses something on standing and then says in the alternative you'd lose on the merits, you have two issues there, and there's one that's operative. We are not the personnel department, and if there is a dispute of fact as to whether it's more important that you had a problem in your record or it's more important that you have no administrative experience, that's someone else's decision. That's not ours. The question that's presented to us is if you exclude someone on this criteria, which is what you did, then is there a dispute of material fact as to whether that criteria was discriminatorily imposed? I don't see how we have anything else before us. Well, and if that's the sort of road of least resistance, I would say based upon this record and Judge Friedman's opinion and the analysis, that SPR was legitimately presented, legitimately approved, and it had legitimate business reasons behind it, and all the plaintiff has presented are conclusory, conspiratorial-type allegations about the creation and the application of this SPR, and I think the futility, the causation argument, I think can bolster that argument because really the SPR simply denied an interview opportunity. It didn't entirely guide the decision. If you look at it in terms of, okay, let's set aside the SPR, what would have happened? Mr. Weeks might have been interviewed or would have been interviewed, and Ms. Holden would have been interviewed, then what would have happened? And I think this court can determine as a matter of law between those two. Are they similarly situated? Who has any reasonable prospect of being hired? And the decision to hire Holden, is there anything unlawful or improper that requires federal review? And the answer there is no. And the merits of the decision to appoint her, I think, are important under that framework because it's not as though someone minimally qualified or underqualified or someone who really had no business getting this job got the job. The right candidate got the job, and there was nothing illegal in terms of race discrimination or retaliation here. Counsel, let me ask you this. Who was it who designed the selective position requirement here? Who wrote that up? Well, my understanding is that as the requesting party, the Department of Community Health, would write it up, and so it would have been a team effort of Head, Collins, and Kelly, and then the civil service staff, Robinson and Cooper, would have taken that and run it through their independent review process. Okay. Well, don't you see a problem here? Cindy Kelly was involved in writing the selective position requirement that resulted in Holden getting the job and Plaintiff not getting the job, yet Kelly was previously removed from her position administratively as a result of a complaint that the Plaintiff had made? And all this comes up, obviously, in relation to the alleged retaliation issue. I guess what I would say briefly as my time has expired is that the case law indicates temporal proximity is not enough, and I think in any situation where you have an unsuccessful employment litigant whose previously alleged race, discrimination, or retaliation, in this case Mr. Weeks went to jury trial, did not prevail, that shouldn't provide license for subsequent lawsuits simply because, yeah, they all still happen to work together. There was no one else in the chain of command who would do this. She has to be able and free to go about her business. The department has to be able and free to go about its business, and Mr. Weeks is still on the payroll, and the fact that he's in that chain of command of itself and the fact of the prior litigation and Cindy Kelly's awareness of it of itself is inadequate as a matter of law for a new retaliation claim to go to jury. Thank you, Your Honors. I see your red light is on. Thank you. Thank you. Thank you, Your Honor. I just have a couple of points. Justice Strange asked a very good question. There was a desire to have. I wanted to call it Judge Strange. Judge Strange. I apologize. The desire to have clinical experience. If there was a desire to have clinical experience, then hiring Richard Young, who doesn't have any of those criteria, undermines that entire rationale. And creates a disputed issue of fact. It creates a disputed issue of fact, and the court picked up on the germane issue. It filtered down to two people. That's the language that they use. It filtered down. That's the quoted language that was used in the response to the EEOC complaint. If it filtered down to two people, then my client, all this stuff that they're alleging that he did, it wouldn't have filtered down to him. That's a genuine issue of fact that needs to be litigated. Sorry, I don't understand that. The qualification process, they only indicated one purported legitimate reason. What I'm saying is that it filtered down to two people. And the only disqualifying factor was the created SPR. You're saying that the two finalists for the position were your client and Kel Holden. And that's established by the record, and I apologize for not being clear on that. And so that's established by the record. So we have a genuine issue of fact. The 23 years of clinical experience that Ms. Holden had is not even a job requirement for the job. Clinical responsibilities are not important for the job. If it was, it would have been contained in the reclassified position that Ms. Holden got. So what is there in the record that says clinical experience is not appropriate for this? The civil service ruled that all the way up the chain that clinical experience was not a requisite of the job based on the clear language of the job description. And there's been a ruling on that. And they knew, civil service knew passively, that this was not allowable. Wasn't that what your client's former lawsuit was about, that this exclusionary addition was unlawful and it went to trial? He was dealing with issues in terms of discrimination, in terms of the position that Ms. Kelly had gotten to be his boss. He was challenging that position. And they didn't look beyond the one reason. They're looking beyond the one reason retroactively today, but they only had the one reason. And for those reasons, I think there are contested genuine issues of fact, and I'm respectfully requesting that this court allow my client an opportunity to have a trial in this matter. Thank you. All right. Thank you. And the case is submitted. When you're ready, you may call the next case.